Today, Kaminski v. Berryhill, number 173314. Mr. Sellers. Good morning. May it please the court, counsel. Joseph Sellers appearing on behalf of Anthony Kaminski this morning. Mr. Kaminski seeks reversal of an administrative law judge decision erroneously denying his claim for disability insurance benefits and supplemental security income. The ALJ's decision rested on fundamental flaws of miscomprehension that caused him to improperly assess and reject three opinions from Mr. Kaminski's treating neurologist, Richard Kristea, that established disability. Contrary to the ALJ's misunderstanding, Dr. Kristea was not offering an opinion on what Mr. Kaminski was physically capable of doing. Rather, Dr. Kristea was offering an opinion building on his general opinion that it was unsafe for Mr. Kaminski to work in any capacity due to his seizure condition. Dr. Kristea's opinions, properly understood, were prophylactic opinions, establishing what he thinks Kaminski should not do in order to avoid triggering a seizure that would pose a risk to himself or others. The ALJ, however, failed to understand, acknowledge, or consider the rationale underlying Dr. Kristea's opinion, and instead believed that this was a run-of-a-mill, procedural functional capacity opinion. Was the doctor saying, in effect, that this man is not capable of making a decision because he thinks he can do more than you really can? Dr. Kristea does opine that Kaminski has difficulty with making decisions and that making a decision in a work environment would cause undue stress to Mr. Kaminski. It's not a matter of distress. It's a matter of thinking you can do things when you physically can't do them. That's all I'm thinking. We heard the case before where somebody can't run big machinery. I can assure you I can't run big machinery either, and that a whole lot of people can't do something like that. But in his case, he did other things. I guess he was a pretty good carpenter. And millwright. When he went back to work, he couldn't handle it. Correct. But he still probably thinks he's a good carpenter. He acknowledges that he struggles to do what he used to be able to do in terms of physically and mentally fixing things, handling tasks around the house. But the record shows that he lacks insight into the severity or nature of his cognitive deficits, including his behavioral issues, his conceptual issues, his concentration issues, and his ability to function in the workplace and express and explain what's going on in his head. His doctors have noted and explained that he does not have the capacity to understand how severe his deficits are. So when he reports, I don't have a problem with memory, you can't trust that self-report because he does not understand that he has a problem with his memory. This is the opposite problem we usually have with credibility in these cases, right? This is an interesting position to be in, Your Honor. Arguing that his allegations within the record are less credible than one would hope. Counsel, can I ask you a question about section 404.1527C, this provision that was applicable at the time that this disability determination was made that no longer is, but this regulation that required the agency to give controlling weight to Dr. Kristea's opinion? Yes. And if it was not going to give controlling weight, there were a series of factors that that regulation requires him to consider, and the ALJ did not consider all of those factors. But you didn't emphasize that that much in your brief, and I'm wondering whether you think that in and of itself was a reason that the ALJ's decision was an error. That reason was subsumed in our argument about the judge failing to cite specific legitimate reasons constituting good cause based on the record to reject Dr. Kristea's opinion. You mean his unique expertise, the length of time that he had been treating the patient, and all of that? Correct, and the underlying rationale, which is one of the factors that they are supposed to consider, the supportability and the explanation provided by the treating source. And even if that regulation, which has been modified, if not almost totally neutered, is not applicable on remand, which it will be because it only applies to, the rescission only applies to claims filed after March 2017, those factors will still be required to be evaluated in giving weight to a treating doctor's opinion, regardless of whether the ALJ can still give controlling weight to the opinion. Because even if a treating doctor's opinion is not entitled to controlling weight, you're still required to weigh it versus the other opinions within the record. And the ALJ arguably did that, but failed, as you pointed out, to specifically go through the majority of those factors, aside from whether or not it was consistent with the objective evidence. But the ALJ's analysis of the objective evidence, that one factor, was flawed because he misunderstood the nature of the opinion and the unreliability of Mr. Kaminsky's reports. And it's that unreliability that makes the evidence that was submitted to the Appeals Council not just new, but material. Because the evidence, both Mr. Davis' letter and Dr. Kristea's letter, co-signed by the nurse, Ms. Starcevich, establish that Mr. Kaminsky's unreliability and inability to acknowledge or understand his own deficits was not limited to isolated instances, as already in the record, before the administrative law judge. Their letters established that this was an ongoing chronic problem caused by his permanent brain damage. And the Appeals Council's conclusion of the contrary was not supported by substantial evidence, and that error warrants remand, in addition to the errors in evaluating Dr. Kristea's opinions in the record. And it's not just the unreliability that the ALJ failed to consider, but the objective evidence confirming and establishing the deficits with memory, concentration, and insight. In the 2013 consultative exam, performed at the request of Social Security, Kaminsky had difficulty with the objective testing designed to elicit deficits in those areas. And the ALJ's rejection of Dr. Kristea's mental opinion all but ignored those objective findings, focusing instead on the unreliable reports. That itself is error, and all of those errors taken together, and singly, warrant remand. I'll reserve the rest of my time for rebuttal. All right. Thank you, Counsel. For the Social Security Administration, Ms. Janicek. Good morning. May it please the Court, Counsel Linda Janicek for the Acting Commissioner of Social Security. At issue in this case is whether the ALJ reasonably weighed the opinion from Mr. Kaminsky's treating neurologist, Dr. Kristea, and whether the evidence that Mr. Kaminsky submitted to the Appeals Council rendered the ALJ's decision contrary. Contrary to the weight of the evidence. Turning first to the opinion evidence, as Judge Barrett noted, a treating physician opinion is only entitled to controlling weight if it's well supported by medical findings, and not inconsistent with other substantial evidence. Here, the ALJ emphasized that, in fact, Dr. Kristea's opinions were inconsistent with other substantial evidence in the record, including Dr. Kristea's own treatment notes, Mr. Kaminsky's reports to his doctors, and other objective evidence. So what do we do with a claimant who thinks he's in better shape than he is, and, in fact, his mistaken accounts of his abilities are part of the evidence that he's disabled? Well, there's a notation shortly after his first seizure in 2000 that he was not acknowledging his deficits, but really the next evidence that he is unable to acknowledge deficits comes in 2015 from the letter from Dr. Kristea that was submitted to the Appeals Council. Dr. Kristea and Nurse Darcevich were treating Mr. Kaminsky from 2000 until 2014, 2015, and they never made any other notations about him being unable to report his symptoms. Do they have to keep saying it? Maybe one time between 2000 and 2015. The fact that they never said it again, I think, speaks to the fact that they were not noting that contemporaneously. What about seizures? As the ALJ noted, Mr. Kaminsky had four seizures in 14 years. His first seizure was in the year 2000. His next seizure was seven years later, and that was after he hadn't been taking his seizure medication for a year. His next seizure was six years later. And then his last seizure in 2014 was after his medication had a bad interaction with his water pill. So over a period of 14 years, he had four seizures, and really two of those seemed to be caused by medication issues. Well, medication, he's had to take medication. Yes, they adjusted his medication. When he wasn't taking his medication in 2007 and he had the seizure, he was put back on the seizure medication. You say put back on it, but he has to take it. Yes. This is one of the problems, I think. I don't know. Maybe not. That he's not taking his medicine? It's hard to tell from the record, but I think he was taken off of his seizure medication. I don't think it's ever been an issue that he's not taking medication that he's supposed to be taking. And then in the 2014 seizure, after the interaction with the water pill, he was told stop taking the water pill. They reduced the dosage of his seizure medication, and there are no further evidence in the record that he's had a seizure since then. But it's not just the seizures either. He sustained a brain injury that has impaired his cognitive skills. And even when he was examined by the state agency physician and psychologist, he was unclean. He didn't clean his home, showed poor memory and math skills, et cetera, et cetera, et cetera. So, again, when fatigue or performance, and as Judge Hamilton is pointing out, when you lack the ability to assess and make judgments about your own capabilities, it is an unusual disability case. The examination in 2013 did show some difficulties with memory. The ALJ acknowledged that. The ALJ also pointed out that Mr. Kaminsky consistently reported that he didn't have difficulties with memory. And his doctors did not note that they observed any difficulties in almost a 15-year period. As far as fatigue and performance, the ALJ also noted that there was not evidence that Mr. Kaminsky was experiencing fatigue. And, in fact, there are a couple of sleep records in the evidence that show that he was getting eight hours of sleep a night and was not having trouble staying awake or with extreme fatigue. Before his date of claimed onset, what did his work record look like? I believe he worked for a mill for about 10, 15 years until it- So, steady, hard work. Yes. Has he worked since then? He tried to go back to the construction job, and I think he was raising pheasants at one point, doing a little bit of farming. But I don't know that he's actually attempted work other than that. I mean, that's a pattern that's pretty consistent with genuine disability, isn't it? Mm-hmm. Not attempting to work? No. In fact, a long record of hard, steady work. An injury, in this case a seizure with brain injury, followed by an inability to return, but with attempts, but then unsuccessfully trying to return to work. I believe he stopped his long-term job for reasons unrelated to his disability. His work at the mill, I believe that the record had said that it closed. I don't think he stopped that job because of his disability. But the construction work, certainly when he tried to return to that, he found that he couldn't perform that work. And, in fact, probably should not perform that work considering the unprotected heights, climbing of ladders and scaffolds, all limitations that the ALG included in the RFC. As the district court noted, Dr. Kristeia had described Mr. Kaminsky as a fall risk who must use seizure precautions. But as the district court emphasized, the triggers were extreme fatigue, stress, inadequate sleep and dehydration. And those triggers wouldn't account for Dr. Kristeia's extremely restrictive medical opinions about standing and reaching and handling and fingering. But there were limitations in the RFC to accommodate safety concerns. Occasionally climbing ramps and stairs, never climbing ladders and scaffolds, no exposure to open machinery, no driving, no moving mechanical parts. All of which were limitations that Dr. Kristeia also noted in his opinions and Nurse Darcevich had also noted occasionally in her progress notes. Which all seem like restrictions for someone who has a seizure disorder are sensible and perhaps even sufficient. But, again, he didn't simply have a seizure disorder. He had an insult to the brain that caused significant brain damage. The ALG acknowledged, yes, he had a traumatic brain injury. The ALJ also acknowledged the June 2013 MRI, which Nurse Darcevich had described as stable, which suggests that his condition was not getting worse. So the ALJ was aware that there was also this traumatic brain injury in addition to the seizure disorder. The ALJ assigned great weight to the state agency reviewing positions both for their physical restrictions and the mental restrictions. The state agency reviewers did say that Mr. Kaminsky could follow simply to mildly complex instructions. And the ALJ deviated from that opinion only slightly to limit Mr. Kaminsky further to simple routine and repetitive instructions. Rather than the mildly complex instructions. I would also point out that there really is nothing in the record to show that Mr. Kaminsky is incapable of reporting his contemporaneous symptoms. He had taken himself off of Zoloft because he was experiencing headaches. So he was aware of the side effects from that medication. When he was hospitalized in September of 2014, he reported that he had been dizzy and experienced lightheadedness. So there's no evidence to show that he's incapable of reporting how he's feeling at the time or how he's doing. There are some reports from shortly after his first seizure that he lacks insight. And then 15 years later, there's a letter from Dr. Kristea and Nurse Darcevich saying that he doesn't acknowledge deficits. But not acknowledging deficits, thinking that he can go back to work construction, is not the same thing as him being incapable of reporting how he's doing to his doctors. And, in fact, his doctors did not note during the many treatment records that Mr. Kaminsky was incapable of reporting how he was doing. Finally, I would just note that the Appeals Council evidence, the agency as HALACS, as I submitted in supplemental authority, does have different definitions of new and material than this court. But under this court's definition, the evidence submitted to the Appeals Council was not new and was not material. But even if the Appeals Council was wrong, the evidence was not new and material, it doesn't mean that the case should be remanded because Mr. Kaminsky would still have to show that the Appeals Council would have reviewed that evidence. And they would only review the evidence if they thought that the weight of the evidence, including the new evidence, made the ALJ's decision contrary to the weight of the evidence. And because that evidence, again, which is a 2015 letter from his former employer and from his doctors, you cannot say that that would have changed the ALJ's decision because we're looking at a single sentence about deficits, which is not in the 15 years previous of treatment records. And Mr. Davis's opinion about Mr. Kaminsky returning to work, it's a lay opinion, and basically he says he couldn't work construction. I see that my time is up. If there are no further questions, I would ask that you affirm the decision of the ALJ. Thank you, Ms. Janicek. Mr. Sellers, any rebuttal? The early notation of issues with insight was not the only evidence that Mr. Kaminsky has problems understanding his psychological deficits. At this 2013 consultative exam, the comparison between his history and his sister's history showed that he did not remember things correctly while she was providing collateral information. So there isn't a 15-year gap. There are several instances in which this has been noted throughout the record, and that is why the evidence submitted to the Appeals Council is material, because it establishes that this is a chronic, lifelong issue since he suffered his permanent brain damage. And that his MRI was stable does little to help the government's argument, because stable permanent brain damage doesn't mean much. It just means that your brain damage hasn't gotten better. Your brain is still damaged. And the government also misstates the standard by which the Appeals Council is supposed to consider evidence. The threshold inquiry of new and material evidence is not whether that evidence would establish that the ALJ's decision was contrary to the evidence of record. The materiality issue is whether it creates a reasonable probability that the ALJ would have changed his mind had he had the evidence that was submitted to the Appeals Council. Those are two different issues, two different standards, and the evidence submitted to the Appeals Council, in this case, satisfied that threshold inquiry. Was there any discussion about something he could do? In terms of? Well, some kind of work or some kind of activity? Well, Dr. Cristea's opinion does provide that he could sit for six hours. No, I don't mean that. I mean, where is she doing something constructive, working? No. The only evidence we have after the injury is his attempt to return to work for Mr. Davis, and it failed. And he didn't just fail at construction work. Mr. Davis gave him simpler work, which is reasonably consistent with the ALJ's limitation to simple routine repetitive work, and he failed at that, too, because of psychological issues, not because of his seizure issues, but because of the cognitive issues that he had. He couldn't deal with the supervisors. He couldn't deal with co-workers. He couldn't deal with the stress. And the vocational expert testified that issues with dealing with supervisors precludes all work, but the ALJ only limited interaction with co-workers and the general public, and was silent on supervisors and provided no explanation. All right. Thank you. Thank you, Counsel. The case will be taken under advisement.